## CONTRACT OF SALE REPUDIATED BY BILLING AT ADVANCE IN PRICE.

Circuit Court of Cuyahoga County.

THE STANDARD TOBACCO & CIGAR COMPANY V.
LEOPOLD LOEB & COMPANY.

Decided, January 20, 1902.

*Contracts—Plaintiff May Not Recover Upon a Contract Which He Has Repudiated.*

Where a vendor ships goods to a vendee and bills the goods so shipped at a price in excess of that specified in the contract of sale, and refuses to correct the invoice or recognize the existence of a contract to sell at the price actually agreed upon, he thereby repudiates the contract made, and if the vendee refuses to accept the goods there can be no recovery even at the agreed price.

*Gilbert & Hills,* for plaintiff in error.
*Brewer, Cook & McGowan,* contra.

HALE, J.; CALDWELL, J., and MARVIN, J., concur.

The plaintiff in error, hereafter designated as plaintiff, is an Ohio corporation having its principal place of business in the city of Cleveland, Ohio.

The defendant in error, hereafter designated as defendant, is a partnership doing business in the city of Philadelphia, Pennsylvania.

The cause of action upon which the defendant obtained a verdict and judgment, is as follows:

"Plaintiffs for their cause of action say, that they are partners under the firm name and style of Leopold Loeb & Company, doing business in the city of Philadelphia and the state of Pennsylvania; that the defendant is a partnership organized and doing business under the laws of Ohio; that there is due plaintiff from defendant on an account, a copy whereof is hereto attached, marked Exhibit A, and made a part hereof, the sum of $584.76, with interest thereon from the 11th day of May, 1895; that said account is for goods sold and delivered as set forth in said Exhibit A, and that the same is now fully due and unpaid."

Reference to the exhibit discloses the fact that the cause of action was for fifteen cases of Little Dutch Tobacco sold by the defendant to the plaintiff at and for the price of eleven cents per pound to be delivered f.o.b. Philadelphia; the total weight of the fifteen cases being 5,316 pounds; payment to be made five months from date of sale.

·The answer was a general ·denial and, upon the issues thus made, the case went to trial.

The contract was made on November 16, 1894, and the goods shipped by the Baltimore & Ohio Railroad· Company January 10, 1895.

It appears from the bill of exceptions that the alleged purchase of this tobacco by plaintiff was made by its agent, Henry E. Boesger, at the place of business of the defendant in Philadelphia.

The contract, if made, was for fifteen specified cases of tobacco then in the warehouse of the defendant, which were designated and examined by the plaintiff's agent. It was subsequently discovered that one of the cases, then designated, had been previously sold, for which another case was substituted by the defendant.

The plaintiff claims that the defendant not having delivered to the common carrier the identical cases sold, had not complied with their contract, and for that reason could not recover in this action.

This would be true unless the plaintiff had, before the shipment, consented or waived its right to object to such substitution. Whether such consent or waiver had been given was a question of fact to be determined by the jury. Upon this subject the jury were properly instructed. The evidence from which the jury found that such waiver had been made, was by no means conclusive, but was such that the verdict should not be disturbed and the judgment reversed for the reason that such finding was not supported by sufficient evidence. Whether the title passed to the purchaser before it had an opportunity to examine the goods substituted, is another question.

It further appears from the record that the defendant on the 10th day of January, 1895, delivered to the Baltimore &

Ohio Railway Co. fifteen cases of tobacco, one of which was the case substituted as above stated, to be shipped to the plaintiff in Cleveland. At the same time the defendant wrote to the plaintiff, enclosing an account of the tobacco at eleven cents per pound. This letter bears date January 10, 1895, and reads as follows:

"Enclosed please find invoice for fifteen cases of *leaf* tobacco shipped today by B. & O. R. R. as per order of Mr. Boesger.

"Thanking you for your order, and soliciting your further patronage, we are,

"Yours truly,<br>"LEOPOLD LOEB & CO.

"P.S.—Sample sent by express prepaid.

"L. L. & Co."

On the receipt of this letter and invoice, the plaintiff replied as follows:

"CLEVELAND, OHIO, Jan. 13, 1895.

"MESSRS. LEOPOLD LOEB & CO.,

"Philadelphia.

"*Gentlemen*: Mr. Boesger reported these goods bought at seven cents. Correct the bill, or they will be subject to your order."

To this letter, there was no reply.

On the 17th of January, 1895, the plaintiff again wrote to the defendant:

"The fifteen cases of Little Dutch are at the depot awaiting the reply to our letter regarding the price."

On the 18th of January, 1895, the defendant, in answer to the plaintiff's letter of the 17th, wrote:

"We sold the Little Dutch to Mr. Boesger at eleven cents per pound marked weight. Knowing Mr. Boesger to be hard of hearing, we told him distinctly and as loud as we could talk, the price above mentioned, in presence of three people. Had the price been seven cents, we would not charge you eleven cents, as we do not do such business."

On the 19th of January, 1895, the plaintiff, answering this letter, wrote to the defendant:

"Mr. Boesger reported the purchase of the Little Dutch at seven cents per pound and so entered it on stockbook. We can not use the tobacco at price billed, and would only accept it at the price named, seven cents.

"The shipment is at your disposal. We will refuse it."

One of two propositions is true: Either the minds of the parties did not meet upon the terms of the contract of sale and there was no contract made by them; or one of the parties was insisting upon a contract known not to have been made, for, manifestly, no contract was made without the knowledge of both parties. .

The jury found that the minds of the parties did meet and an agreement was made for the sale of the tobacco at seven cents per pound.

The court, in substance, charged the jury that defendant was entitled to a verdict if they found the parties agreed upon the price of the tobacco at either eleven or seven cents per pound.

It is not doubted that if one sues for goods sold, delivered to, and accepted by the purchasers at an alleged contract price, and the evidence shows that the contract price was less than that alleged, a recovery may be sustained at the less price.

It is established by the verdict of the jury that the defendant sold this tobacco for seven cents per pound and then shipped to the plaintiff, under an assumed contract of eleven cents per pound, and so notified the plaintiff by bill rendered and, on request, refused to correct the bill rendered and insisted that the contract price was eleven cents. The plaintiff then refused to receive the tobacco and so informed the defendant.

Under all the circumstances of this case we think the plaintiff was fully justified in refusing to receive the tobacco.

It is said that the tobacco, under the terms of the contract, was to be delivered by the seller f.o.b. Philadelphia, and when so delivered, the title passed to the plaintiff, and, thereafter, the rights of the parties must be settled in accordance with the contract.

In general, a delivery to a carrier for account and risk of the consignee, is, in law, a delivery to the latter and a contract of

sale complete by such delivery; but to pass title to the purchaser by such delivery it must be in exact compliance with the terms of the contract.  A delivery to the common carrier under some other contract than the one made, was not a delivery to the plaintiff.  Quantity, quality and price are essential elements of a sale, and a shipment of tobacco, varying in any of these essentials from the contract made, was not a shipment under such contract.

By shipping at eleven cents per pound, the defendant repudiated any other contract.  Especially is this true since the defendant expressly denied that a contract had been made at seven cents, or that a shipment had been made at that price before the shipment of goods reached the plaintiff.

The plaintiff denied that a contract of sale had been made at eleven cents.

The plaintiff was right in this claim; the defendant was wrong.

A reference to the correspondence will show that the defendant in most express terms repudiated the contract made, and insisted upon one entirely different.  The result of this was to release the plaintiff from its contract.  The defendant was the first to refuse performance of its contract, and thereafter was in no position to enforce it against the plaintiff.  Had the defendant accepted and relied on the contract actually made, there would have been no contention between the parties.

The whole controversy arises out of the attempt of defendant to enforce a contract never made.  But whether the claim made by the defendant was, in fact, a repudiation of its contract and should so be held as a matter of law, it is quite clear that such claim fully justified the plaintiff in refusing compliance on its part.

Again, it seems to be definitely settled that if fifteen cases of tobacco ordered by the plaintiff of the defendant, to be shipped f.o.b. and of a certain quality, without any specification or designation of the goods purchased, the title would not pass on shipment until the purchaser had an opportunity of inspecting the goods.

In this case the goods actually purchased were not delivered to the purchaser. Other goods were substituted for one case of tobacco purchased; this was done without any express agreement of the part of the purchaser. The most that can be claimed in behalf of the defendant is that there was a waiver by plaintiff of the right to object to such substitution. But surely the plaintiff had the right to examine the substituted goods, that it might determine for itself whether the goods substituted were of the same quality as those purchased, before title passed to it under the contract.

It would, therefore, seem unjust and unreasonable to hold that the title to this property passed to the plaintiff by delivery to the common carrier under the circumstances disclosed in the evidence. The defendant should not be permitted to repudiate the contract made, refuse the offer of the plaintiff to comply fully with the exact terms of sale, and then, when beaten in this wrongful attempt to enforce a different agreement than the one made, be permitted to recover on a contract which it had expressly repudiated. Our judgment is that upon this subject the charge of the court was misleading and, therefore, erroneous. We find no other error in this record.

The judgment of the court of common pleas is, therefore, reversed, and the cause remanded for further proceedings.